UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-CIV-60037-COHN/SELTZER

LINDA GEORGIAN and
INTERACTIVE INFORMATION
NETWORKS, LLC,

      Plaintiffs,

v.

THE ZODIAC GROUP, INC.,
DAVID FELGER,
DANIEL FELGER, and
MATTHEW PEREZ,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment

[DE 180].  The Court has reviewed the Motion for Summary Judgment, Plaintiffs'

Opposition to Defendants' Motion for Summary Judgment [DE 232] ("Opposition"), and

Defendant's Reply [DE 256], as well as the parties' respective statements of facts and

supporting evidence.  The Court heard argument from counsel at a hearing on July 29,

2011, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Linda Georgian ("Georgian") is a purported psychic who had a

contractual relationship with Defendant Zodiac Group, Inc. ("Zodiac").  Among other

things, the agreement between Georgian and Zodiac allowed Zodiac "to use and exploit

[Georgian's] name, likeness, image, photograph, . . . and endorsements . . . in

connection with the promotion, advertisement and commercial exploitation of Zodiac's

telephone psychic entertainment services."  DE 63 ¶ 45 ("Second Amended Complaint"
or "SAC").  After the contractual relationship concluded, however, Zodiac continued to
use Georgian's name and likeness.  See generally Second Amended Complaint.
According to Plaintiffs, Zodiac, through a litany of subsidiaries, used Georgian's name
and likeness on numerous websites controlled by Zodiac, listed phone numbers in
directories all over the country that purported to be affiliated with Georgian, and
employed telephone operators who represented to consumers that they were
associated with Georgian even though they were not.  See generally id.

Consequently, Georgian filed a complaint against Zodiac, David Felger, and
Daniel Felger.  See DE 1.  Thereafter, Plaintiff amended her pleadings to add
Interactive Information Networks, LLC ("IIN") as an additional plaintiff and Matthew
Perez as an additional defendant.  The operative complaint [DE 117] alleges six counts:
(1) Violations of the Lanham Act 15 U.S.C. §§ 1117, 1125, et seq. ("Count I");
(2) Unauthorized Publication of Image and Name Fla. Stat. § 540.08 ("Count II");
(3) Violation of FDUTPA ("Count III");[1] (4) Violation of RICO 18 U.S.C. § 1962(c)
("Count IV");[2] (5) RICO Conspiracy to Violate 18 U.S.C. § 1962(c)-(d) ("Count V"); and
(6) Unjust Enrichment ("Count VI").  Plaintiffs predicate all six counts on Defendants
allegedly deliberate, knowing, and intentional participation in the following "Six
Schemes": (1) the Listings Scheme; (2) the Website Scheme; (3) the Fraudulent Phone

---

[1]     "FDUTPA" is the Florida Deceptive and Unfair Trade Practices Act Fla.
Stat. § 501.201 et seq.

[2]     "RICO" is the Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. §§ 1961-1968 (2006).

Representation Scheme; (4) the Fraudulent Promotional Scheme; (5) the Credit Card

Cover Up Scheme; and (6) the Unauthorized Optimization Scheme.[3]

On May 19, 2011, Defendants filed their Motion for Summary Judgment.[4]

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To

---

[3]     Defendants' Motion for Summary Judgment addresses the Six Schemes rather than the elements of the substantive counts in the Third Amended Complaint. The Motion makes general arguments about the admissibility and sufficiency of evidence, makes fleeting references to the causes of action, and submits that summary judgment in their favor is appropriate. Stated differently, Defendants have organized their Motion in a fashion that makes it exceedingly difficult for the Court to determine whether Defendants have carried their burden to show that no record evidence supports the alleged causes of action. Likewise, Plaintiff's Opposition addresses the Six Schemes rather than the causes of action. Nonetheless, the Court endeavors to apply the record evidence to each of the causes of action to determine if any disputed issues of material fact exist.

[4]     Defendants filed their Motion for Summary Judgment on behalf of all named defendants, and the Motion proceeds as though the individual defendants are a single entity without ever differentiating amongst defendants. Indeed, in the first sentence of Defendants' Motion for Summary Judgment, the various defendants define themselves collectively as "Defendants" and then proceed to make a collective argument. Because Defendants do not assert any arguments on behalf of individual defendants that may not be available to the corporate defendant or to the group as a whole, the Court's ruling in this Order treats the "Defendants" as they have treated themselves: a single entity.

discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

**B. Defendants' Motion for Summary Judgment**

1. Plaintiff Interactive Information Networks

The Third Amended Complaint alleges that "Defendants' deceptive, unconscionable and unfair trade practices, and unfair competition, directly and proximately caused Linda Georgian and IIN to suffer injury, losses and damages, which are continuing in nature."  TAC ¶ 302.  Plaintiffs further allege that "Plaintiff IIN is a

4

person who has suffered a loss as a result of a violation of FDUPTA and according [sic] is entitled to recover reasonable and necessary attorneys' fees and costs of suit pursuant to Fla. Stat. § 501.211(2)." Id. ¶ 306.  Notwithstanding, Defendants argue that "IIN lacks standing to claim damages under Florida's Deceptive and Unfair Trade Practices Act, where it is not in competition and has no protectable injury."  Motion for Summary Judgment at 24 (citing Phoenix of Broward, Inc. v. McDonald's Corp., 489 F.3d 1156 (11th Cir. 2007) (holding that prudential standing doctrine was applicable to Lanham Act false-advertising provision)).[5]

Plaintiffs argue that IIN has standing because IIN and Georgian "are parties to an agreement that provides IIN with an exclusive license to use, advertise and publicize her name, likeness, reputation, biographical history, and endorsement as a psychic." Opposition at 27.  Furthermore, Georgian avers in her affidavit that "[i]n March 2010, I entered into an agreement with Interactive Information Networks ("IIN") whereby I provided IIN with an exclusive license to use, advertise and publicize my name,

---

[5]      Notably, Phoenix of Broward, Inc., was a Lanham Act case from Georgia and has nothing to do with FDUTPA.  Nonetheless, "Article III of the Constitution grants this Court authority to adjudicate legal disputes only in the context of 'Cases' or 'Controversies.'"  Camreta v. Greene, 131 S. Ct. 2020, 2028 (2011).  Litigants, therefore, must demonstrate a "personal stake" in the suit.  Id.  "The party invoking the Court's authority has such a stake when three conditions are satisfied: The petitioner must show that he has 'suffered an injury in fact' that is caused by 'the conduct complained of' and that 'will be redressed by a favorable decision.'" Id. (quoting  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992) (internal quotation marks omitted)).  Parties must have the necessary stake not only at the outset of the case, but throughout the litigation.  Id. (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997))

likeness, image, reputation, biographical history, and endorsement."[6]  Georgian Affidavit

[DE 214-1] ¶ 24.  Georgian's naked assertion that her agreement with IIN is "exclusive"

does not make it so.

The first sentence of the two-page Agreement that Georgian and IIN executed,

see DE 214-2 ("IIN Agreement"), states as follows:

> Linda Georgian (LG) provides the exclusive license to Interactive
> Information Networks, LLC (IIN) to use, advertise and publicize LG's
> name, likeness, image, reputation, biographical history, reputation and
> endorsement as a psychic on a worldwide basis for a period of 24 months
> from the date of signing this agreement on the following terms:
>
> . . .
>
> (B) Any time that IIN wants to use LG's name, likeness, [etc.], IIN will give
> LG at least 20 days advance written notice and an offered amount of
> additional fees for that use.  LG may accept that amount or counter with a
> different amount.  If LG and IIN do not reach agreement within 7 days
> after IIN sends the notice, then IIN will not use LG's name, likeness, [etc.],
> in the way stated in the notice, and LG will not receive any fees offered.
>
> (C) LG can continue to advertise her own psychic services on her website
> and to give psychic readings for fees, as long as she does not license or
> contract any right to use her name, likeness, [etc.] for any other
> organization . . . except one that is 100% owned by LG.
>
>  . . .
>
> (E) LG and IIN agree that the value of LG's name, likeness, image,
> reputation, biographical history, endorsement and publicity rights has
> been damaged by the unauthorized use of the by The Zodiac Group, Inc.
> and the Felgers and their networks and by Ingenio/AT&T and that those
> rights would have higher value if those companies and people had not
> done what they did.

DE 214-2 (emphasis added).  Georgian and IIN obviously executed this contract solely

---

[6]      Georgian executed the agreement with IIN on March 8, 2010 (i.e., two
months after she filed her complaint in this case).  See DE 214-2.  It appears that IIN
was created for the sole purpose of executing the IIN Agreement.

for purposes of the instant litigation.  The IIN Agreement references the litigation and purports to grant IIN the right to sue Defendants.[7]  Moreover, the greater part of the IIN Agreement sets forth a split between IIN and Georgian, should they prevail in a lawsuit against a third party for misusing Georgian's name, likeness, etc.  IIN, however, has never utilized Georgian's name or likeness, nor has IIN ever operated a psychic network.  In other words, IIN is not in competition with Zodiac.[8]

Furthermore, the IIN Agreement, despite its use of the word "exclusive," does not grant IIN any exclusive rights.  Indeed, Georgian need not allow IIN to ever use her name, likeness, etc.  Also, the IIN Agreement allows Georgian to use her name, likeness, etc. without IIN's consent or participation.  The IIN Agreement merely prohibits Georgian from licensing her name, likeness, etc. to another third party for twenty-four months.

Because IIN has never competed with Zodiac, or even been engaged in the operation of a psychic network, the Court finds that IIN has suffered no injury in fact.[9] To the extent IIN contends its investment in the Georgian brand has suffered because of Defendants' alleged unauthorized use of Georgian's name, likeness, etc., such a contention is without merit, for the IIN Agreement references Defendants' allegedly

---

[7]     The Court questions the legal significance of the portion of the IIN Agreement that grants IIN the right to sue Defendants, but the Court need not construe that provision to resolve Defendants' Motion for Summary Judgment.

[8]     At the hearing on Defendant's Motion for Summary Judgment, counsel for Plaintiffs informed the Court that IIN is now operating a business in competition with Zodiac.  However, no record evidence supports counsel's assertion.  Thus, even if true, it is not relevant here.

[9]     See supra footnote 8.

wrongful conduct, thereby indicating the parties' negotiations contemplated the value of the investment in light of Defendants' conduct.  Moreover, the IIN Agreement proceeds as though Defendants' conduct – and the proceeds that could potentially be generated by a damages recovery – is actually an asset.  Because IIN has not been injured by Defendants' actions, not only does IIN lack standing to assert a FDUTPA claim, but IIN lacks standing to assert <u>any</u> claims against Defendants.  The Court will therefore grant summary judgment in favor of Defendants and against Plaintiff IIN on all counts.  The remainder of this Order addresses the claims asserted by Linda Georgian.

<u>2. Lanham Act</u>

In Count I, Plaintiff Georgian asserts a claim for damages and injunctive relief under the Lanham Act, 15 U.S.C. § 1125(a)(1).  The Lanham Act provides, in pertinent part, as follows:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

To prevail on an 1125(a) claim, a plaintiff must establish (1) that he had a valid trademark and (2) that the defendant had adopted an identical or similar mark such that consumers were likely to confuse the two.  See 15 U.S.C. § 1125(a).  Importantly, the law provides trademark protection to those who have not registered their trademark in the United States, but who were the first to use the mark in the United States marketplace.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767–68 (1992).

The Third Amended Complaint alleges that "Defendants . . . have engaged in and continue to engage in false designation of origin, false descriptions, and unfair competition in violation of 15 U.S.C. §1125(a)(1)(A) **and** (B)."  TAC ¶ 275 (emphasis added).  Defendants' Motion for Summary Judgment, however, addresses only § 1125(a)(1)(B).  Notwithstanding, the Court addresses both.

### a. 15 U.S.C. § 1125(a)(1)(A)

The Lanham Act provides protection for Georgian's name because the Act protects "any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127; see also Parks v. LaFace Records, 329 F.3d 437, 445-47 (6th Cir. 2003) (concluding that Rosa Parks could assert a claim under § 43(a)(1)(A) against a rap group that used her name in such a way as to cause confusion as to whether she sponsored or was affiliated with the group) and Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1107 (9th Cir. 1992) (upholding Tom Waits' Lanham Act claim against Frito-Lay as a result of an unauthorized commercial suggesting that Waits endorsed Frito-Lay's products).  This is consistent with the main rationale behind

trademarks, which is to protect the public from being deceived as to the source and quality of goods or services, and protect the mark's owner from infringement of her property rights.  See 1 J. McCarthy, Trademarks and Unfair Competition § 2:1 (4th ed. 2009).  Georgian's use of the name "Linda Georgian" not only identified her as a particular individual, but, more importantly, "identified her unique entertainment services."  See Miranda v. Guerrero, No. 08–22326–CIV, 2009 WL 1381250, at *5 (S.D. Fla. May 14, 2009).

The parties do not dispute that Defendants adopted a mark identical to Georgian's mark.  The Court must therefore determine whether a likelihood of confusion exists.  Generally, seven factors ("the Alliance Factors") are relevant when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the product and services offered by the plaintiff and defendant; (4) the similarity of the sales method; (5) the similarity of advertising methods; (6) the defendant's intent (e.g., does the defendant hope to gain competitive advantage by associating its product with the plaintiff's established mark); and (7) actual confusion.  Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000).

Defendants have failed to show the absence of a disputed issue of material fact on the first factor.  Indeed, Georgian produced evidence that she is "an internationally renowned psychic who has achieved worldwide acclaim and notoriety for [her] psychic

abilities."[10]  Affidavit of Linda Georgian [DE 214-1] ¶¶ 3.  Georgian also produced

evidence that "[s]ince the early 1970s [she] has appeared on numerous television and

radio shows as a psychic[,]" and that by the 1990s she had developed "a reputation as

one of the premier psychics in the world."  Id. ¶¶ 4-8.

Defendants also fail on the second factor.  Unrebutted evidence shows that

Defendants used a mark identical to Georgian's mark (e.g., Zodiac used Georgian's

name and likeness on Zodiac's website after the parties' agreement expired).  Likewise,

Defendants fail on the third, fourth, and fifth factors.  Georgian and Defendants

provided identical services; Georgian and Defendants both provided psychic readings

on the phone, and Georgian and Defendants both advertised on the internet.  Indeed,

to the extent there is an absence of a disputed issue of fact on these issues, the

absence of dispute benefits Georgian rather than Defendants.

As to the sixth factor – Defendants' intent – the Court finds a disputed issue of

fact.  Defendants aver that "[t]here was no deliberate scheme by any of the

DEFENDANTS to continue to capitalize on ZODIAC's former association with LINDA

GEORGIAN and promote her Brand using her name and likeness."  Defendants'

Statement of Undisputed Facts [DE 178] ¶ 10 (citing Affidavit of Daniel Felger [DE 181]

¶ 11, Affidavit of Matthew Perez [DE 182] ¶ 18, and Affidavit of David Felger [DE 183]

---

[10]      The Court recognizes that Georgian's affidavit is self-serving.
Nonetheless,"for purposes of summary judgment, 'self-serving testimony,' . . . may not
be disregarded by the district court in determining whether there is a genuine dispute of
fact on a material issue in the case."  Newsome v. Chatham County Detention Center,
256 Fed. App'x 342, 346 (11th Cir. 2007). "'Courts routinely and properly deny
summary judgment on the basis of a party's sworn testimony even though it is
self-serving.'"  Id.  (quoting Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir. 2005)).

¶ 11).  Nonetheless, making all reasonable inferences in favor of the non-moving party, the Court finds a disputed issue of material fact regarding Defendants' intent.  Indeed, Georgian submits evidence that Defendants' psychic readers represented to callers that Georgian was affiliated with Zodiac long after the parties' agreement expired.  Likewise, Georgian submits evidence that a Zodiac psychic said she was Linda Georgian.[11]  See Affidavit of Linda Georgian [DE 214-1] ¶ 19 ("Although I do not remember which phone or credit card I used, I remember the incident vividly.").

More importantly, Georgian submits evidence that Zodiac made outbound calls and left messages for potential clients that represented Georgian was still affiliated with Zodiac after the parties' agreement terminated.  See DE 214-8 ("Alonso Affidavit") ¶ 3 ("In or around March 2010, I received a call on my cell phone and a recording which stated that I was being called by the 'Linda Georgian Psychic Friends Network, sponsored by the Zodiac Group Incorporated . . . .  A live person/operator then came on the line and I asked if I could get a reading with Linda Georgian. . . .  I was told that it is possible but that Linda Georgian was the spokesperson for the company.").[12]

---

[11]    Defendants submit that Zodiac's psychics are independent contractors and that Defendants are not responsible for what the independent contractors say to callers.  See Defendants' Facts ¶ 50 (citing affidavits).  Georgian disputes this contention.

[12]    At the hearing on Defendants' Motion for Summary Judgment, defense counsel pointed to Plaintiffs' admission in Plaintiffs' Statement of Disputed Facts [DE 233] wherein Plaintiffs "admitted" Defendants' contention that "[a]t no time did Zodiac generate any automated calls that referenced Linda Georgian post March, 2007."  Compare DE 178 ¶ 72, with DE 233 ¶ 72.  Plaintiffs' counsel explained that the admission was a mistake.  The Court accepts counsel's representation that the admission was unintentional because Plaintiffs' other statements of fact, see, e.g., DE 233 ¶ 73, along with their other pleadings and record evidence, indicate that Plaintiffs not only deny that point, but have evidence to the contrary.  The Court therefore

Furthermore, a reasonable fact finder could infer Defendants' intent from the fact that Georgian's name and likeness appeared on Defendants' website for so long after the parties' agreement expired.

Lastly, as to the seventh factor, Plaintiffs have evidence of actual confusion. See DE 214-4 ("Votino Affidavit") ¶ 8 ("I found it confusing that Linda Georgian's name was listed with the phone number 800-310-5954 in numerous on-line directory listings."). Georgian, however, has no direct evidence that Defendants posted those listings or otherwise caused them to be posted. Nonetheless, Georgian contends that Defendants "placed at least scores of both internet directory and yellow page listings advertising Georgian's psychic services." To support that contention, Georgian cites only affidavits of Linda Georgian and Abby Votino, neither of whom have any personal knowledge regarding the placement of the listings. See Plaintiffs' Statement of Disputed Material Facts [DE 233] ("Plaintiffs' Facts") ¶ 4. Defendants, on the other hand, submit evidence that Defendants bear no responsibility for the online directory listings. See Deposition of Andy Gordon [DE 169-1] at 13-14 (reflecting Mr. Gordon's testimony that he satisfied himself that the source of the directory listings was not from either Zodiact Group, David Felger, Daniel Felger or Matt Perez); see also Deposition of Manuel E. Marrero, Jr. [DE 189-1] at 14-20 ("Based on my research and based on my experience [using online directories], the primary data sources . . . trade information back and forth and don't verify it very well. . . . [I]t then starts showing up in a bunch of locations with incorrect information and keeps repeating that cycle over and over.").

_____

regards the admission in Plaintiffs' Statement of Undisputed Facts as a scrivener's error with no evidentiary significance.

Undeterred, Georgian argues that Defendant David Felger is responsible for spoliation of evidence on this point because "during the pendency of this case, [he] successfully requested that Localeze purge all information related to the phone number 800-310-5954." Id. ¶ 16.  Georgian further charges that "David's action was intentional and done while he, a former prosecutor, knew of his obligation not to request the destruction of evidence in a pending case." Id.

Georgian's inflammatory accusation regarding spoliation generates more heat than light, for her characterization of Mr. Felger's conduct is unsupported by record evidence.  Mr. Felger never requested "the destruction of evidence."  Rather, Mr. Felger asked Localeze to remove the listings at issue.  See Defendants' Statement of Undisputed Facts [DE 178] ("Defendants' Facts") ¶ 33 ("As soon as the instant lawsuit commenced, and ZODIAC learned that LINDA GEORGIAN was complaining of additional internet listings, DAVID FELGER corresponded with various online directories and Localeze to request their removal.").  Notwithstanding, Georgian faults Mr. Felger because he did not instruct Localeze "to retain information regarding the source of those listings." Plaintiffs' Facts ¶ 31.  In other words, Georgian faults Mr. Felger for what he did not say.  Georgian has no evidence that Mr. Felger actually destroyed any information or requested anyone else to destroy any information.  Rather, she faults him for taking action to correct the situation that she complains of in her lawsuit.

Georgian also submits that Mr. Felger did not contact Localeze to remove the listings until almost three months after she filed her first complaint on January 12, 2010, see id., but Georgian fails to mention that she did not serve Mr. Felger, or any other defendant, until April 23, 2010.  See DE 31.  Regardless, Georgian's own recitation of

14

the relevant chronology reveals that she had an adequate opportunity to obtain the information via a subpoena duces tecum before Mr. Felger ever contacted Localeze.

Furthermore, Georgian filed the affidavit of Andy Gordon, the Vice President of Localeze, with the Court.  See Business Records Affidavit for Amacai Information Corporation D/B/A Localeze.com [DE 214-5] ("Gordon Affidavit").  The Gordon Affidavit references an email from Mr. Felger wherein Mr. Felger requested that Localeze delete the unauthorized listings.  See id. ¶ 8.  The affidavit states that the email from Mr. Felger is attached to the affidavit.  See id.  The Court, however, finds no email attached to the Gordon Affidavit.  Such an email would reveal precisely what Mr. Felger asked Localeze to do.

Ostensibly, the referenced email is the same email attached to Mr. Gordon's deposition (and filed by Defendants).  See DE 169-3 at 3.  That email shows that David Felger contacted Mr. Gordon at Localeze, explained to him that Zodiac's contract with Ms. Georgian had expired, asked Mr. Gordon to remove the unauthorized listings, and asked for the source of the listings.  See id.  Thus, the claims of spoliation against Mr. Felger are without merit.  Indeed, at Mr. Gordon's deposition, when asked, "did you satisfy yourself, without question, that the source of the directory listing was not from either Zodiac Group, David Felger, Daniel Felger or Matt Perez?", Mr. Gordon answered, "Yes."  See DE 169-1 at 13-14.[13]

---

[13]   Notably, Plaintiffs discuss Mr. Felger's alleged spoliation at great length, but have never moved for sanctions. The Court rejects Plaintiffs' argument that Mr. Felger should have instructed Localeze "to retain information regarding the source of those listings."  To the extent Georgian now moves for sanctions or a spoliation instruction, her motion is denied.

15

Nevertheless, Georgian submits that Defendants are responsible for the listings on third party websites because Defendants had a motive to create the listings. Georgian maintains that "circumstantial evidence is sufficient to show the DEFENDANTS' involvement in causing the GEORGIAN Brand to be placed on the Localeze database where a search engine such as yellowpages.com could pick up the listing."  Plaintiffs' Facts ¶ 15.  "Ryan Mulvaney, a Mojopages.com employee, testified that on October 29, 2009 . . . 29 PFLG Listings were simultaneously posted on Mojopages.com's database."  DE 233 at 24 ¶ 27 (citing DE 168-1 at 25/1-27/25).  The mere existence of the listings, with Georgian's name and Zodiac's phone number, placed after the parties' agreement expired, is suspicious.  Because Zodiac had more motive than any other party to place the subject listings, a reasonable fact-finder could infer that Zodiac indeed placed the listings.  Georgian has therefore pointed to a disputed issue of material fact regarding the origin of the listings.

Georgian has demonstrated disputed issues of material fact on all seven of the Alliance Factors set forth above.  Georgian has therefore demonstrated disputed issues of material fact regarding the likelihood that confusion exists.  Thus, to the extent Defendants' Motion for Summary Judgment argues that Georgian has failed to demonstrate a disputed issue of material fact to prevail on a claim under 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act, the Court denies the motion.

b. 15 U.S.C. § 1125(a)(1)(B)

To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or

service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising.

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).

The first element requires a plaintiff to "show that the statements at issue were either '(1) commercial claims that are literally false as a factual matter' or '(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.'" Id. at 1261 (quoting United Indus. Corp. v. Clorox Co., 140 F.3d at 1175, 1180 (8th Cir. 1998)). In other words, "[t]o be actionable under the Lanham Act, the speech must be commercial in nature." Futuristic Fences, Inc. v. Illusion Fence Corp., 558 F. Supp. 2d 1270, 1278 (S.D. Fla. 2008). "[C]ommercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests." Kleiner v. First Nat'l Bank, 751 F.2d 1193, 1204 (11th Cir. 1985).

Thus, to satisfy the first element of their Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B), Georgian submits evidence that Defendants made commercial claims that are literally false as a factual matter. Specifically, "Zodiac's website [which contained representations regarding Georgian's affiliation with Zodiac] constitutes commercial speech in that it is designed to promote Zodiac's business interests through the posting of endorsements from celebrity psychics like Georgian." Opposition at 30; see also DE 117-3 at 4-11; TAC ¶ 71; DE 133 ¶ 71. Furthermore, unrebutted evidence shows that the claims on the website (i.e., that Georgian was affiliated with Zodiac)

17

were false as a factual matter as of March 2007.[14]  Plaintiffs, therefore, have

demonstrated a factual dispute regarding the first element of a Lanham Act claim under

15 U.S.C. § 1125(a)(1)(B).

Likewise, Plaintiffs' evidence regarding the misrepresentations on Zodiac's

website and the misrepresentation of Zodiac's phone representative satisfies the

second element of a Lanham Act claim (i.e., the statements deceived, or had the

capacity to deceive, consumers).  It is self-evident that an unauthorized endorsement

has the capacity to deceive a consumer that sees or hears the representation.

Even if an advertisement is literally false, however, a plaintiff must still establish

materiality.  To establish materiality, a plaintiff must demonstrate that "the defendant's

deception is likely to influence the purchasing decision."  Osmose, Inc. v. Viance, 612

F.3d 1298, 1319 (11th Cir. 2010).  "A plaintiff may demonstrate [that the deception is

likely to influence the purchasing decision] by showing that 'the defendants

misrepresented an inherent quality or characteristic of the product.'"  Id. (quoting

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1250

(11th Cir. 2002)).

As noted above, Mr. Alonso avers that "in or around March 2010," he received a

call on his cell phone with a recording that stated it was from the "Linda Georgian

Psychic Friends Network, sponsored by the Zodiac Group Incorporated."  Alonso

Affidavit ¶ 3.  Mr. Alsonso further avers that a Zodiac phone representative told him that

Linda Georgian was a spokesperson for the company and that it was possible to get a

---

[14]     Defendants argue that Georgian's endorsement on the Zodiac website
does not constitute a commercial claim.  The Court summarily rejects that argument.

reading from her.  See id.

Evidence, taken in the light most favorable to Plaintiffs, shows that Zodiac made outbound calls that stated Georgian was affiliated with the company even though she was not.  Also, some callers who called Zodiac and asked for Linda Georgian were told that Georgian was affiliated with Zodiac even though the parties' agreement had already terminated.  Lastly, Zodiac's website represented that Georgian endorsed Zodiac even though she did not.  The question therefore becomes whether such representations "misrepresent[] an inherent quality or characteristic of the product." 1-800 Contacts, 299 F.3d at 1250.  The Court finds that it does.  Specifically, Linda Georgian's endorsement and affiliation with Zodiac's psychic services was an inherent quality or characteristic of the product. Cf. Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. . . . This use was without [Plaintiff's] consent and was likely to cause confusion.").  Plaintiffs have therefore pointed to a disputed issue of material fact on the third element of a Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B).

The fourth element of a Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B) – effect on interstate commerce – is easily satisfied here as Zodiac offered psychic readings via telephone on a nationwide basis.  As to the fifth and final element of a Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B), – i.e., the plaintiff has been or is likely to be injured as a result of the false advertising – the Court finds that Defendants have failed to show the absence of a disputed issue of fact for this element.  Under the parties' agreement, Georgian received payment in exchange for her endorsement of

19

Zodiac.  The Court reasonably infers that Georgian would have continued to receive payment for her continued endorsement of Zodiac had she agreed to extend the parties' agreement per Defendants' request.  Indeed, the fact that Zodiac desired to maintain her endorsement reflects that her endorsement had at least some value. Georgian, however, did not agree to extend the parties' agreement, and Zodiac continued to use her endorsement anyway.[15]

Because Defendants have failed to show the absence of disputed issues of fact regarding Georgian's Lanham Act claims, the Court will deny Defendants' Motion for Summary Judgment as it pertains to Georgian in Count I.

### 3. Unauthorized Publication of Image and Name Fla. Stat. § 540.08

In Count II, Georgian alleges that "[a]fter March 20, 2007, Defendants have published, printed and displayed . . . and otherwise publicly used for trade or for commercial and advertising purposes Linda Georgian's name, photograph and likeness . . . without her express written or oral consent to such post-March 20, 2007 use."  TAC ¶ 282.  Georgian alleges that such use occurred on Zodiac's website, in online advertising, and in representations made by Zodiac's phone representatives.  Section 540.08, Florida Statutes, provides in pertinent part as follows:

> (1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:

---

[15]   Defendants argue that Plaintiffs "do not address the absence of evidence of damages in their Response."  Reply at 14.  Defendants, as the movants here, have the burden to prove that Defendants' conduct caused Georgian <u>no</u> damages.  The Court finds that Defendants have failed to carry that burden.

(a) Such person; or

(b) Any other person, firm or corporation authorized in writing by such
person to license the commercial use of her or his name or likeness[.]

Fla. Stat. § 540.08.

Defendants concede that the information on Zodiac's website constitutes

"publication."  See Motion for Summary Judgment at 12.  However, Defendants contend

that "the ZODIAC website is not commercial, and does not directly promote any goods

or services as is required for the claim to be actionable under Florida Statutes

§ 540.08."  Id. (citing Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1325 (11th Cir.

2006); Valentine v. C.B.S., Inc., 698 F.2d 430, 433 (11th Cir. 1983); Tyne v. Time

Warner Entm't Co., 901 So. 2d 802 (Fla. 2005)).  Specifically, Defendants argue that

"the two offensive internal pages did not directly promote any services, did not link

GEORGIAN's name to any commercial telephone number or psychic line, did not

advertise LINDA GEORGIAN's Brand or call upon customers to dial in for a live reading

or in any way promote income-generating calls."  Id.

Plaintiffs' Opposition contains no argument that directly rebuts Defendants'

characterization of Zodiac's website.  Plaintiffs, however, assert that "[u]sing plain

common sense, the reason that Zodiac would post such information on its website is to

attract customers to its brand."  Opposition at 15.  Making reasonable inferences in

favor of Georgian, the Court finds that Plaintiffs have pointed to a disputed issue of

material fact regarding whether Defendants used Georgian's name and likeness on

Zodiac's website to directly promote services.  Even though the website page did not

have Georgian's likeness and a psychic phone line number on the same page, a

consumer searching for Georgian on the internet could find the page, see the purported affiliation for Zodiac, and then seek out Zodiac's number.  Besides, even if the Court accepts Defendants position that the website was designed to attract psychic readers to the Zodiac brand (i.e., employees and affiliates), rather than consumers of Zodiac's services (i.e., clients), a fact finder could conclude that Defendants used Georgian's name to make their own business more successful by attracting more psychic readers. Compare Tyne, 902 So. 2d at 808 ("[T]he purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else.").  Furthermore, the use of Georgian's name in outbound automated phone calls, as discussed above, could violate section 540.08.  The Court therefore rejects Defendants' argument and will deny Defendants' motion for summary judgment as it pertains to Georgian on Count II.

### 4. Violation of FDUTPA

In Count III, Georgian alleges a violation of FDUTPA.  The FDUTPA is a creature of Florida law.  The purpose of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2) (2006).  Because the Supreme Court of Florida has not set forth the elements of a FDUTPA claim, the decisions of the Florida District Courts of Appeal guide this Court's analysis.  See Fla. Family Policy Council v. Freeman, 561 F.3d 1246, 1256 (11th Cir. 2009) (citing Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court

applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.")).  With that rule in mind, the Court turns to the FDUTPA.

The Court finds Judge Padavano's opinion in Davis v. Powertel, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000), instructive.  In Davis, Judge Padavano recognized that the Florida Deceptive and Unfair Trade Practices Act provides a cause of action "against a party who has engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' but it does not define the elements of such an action."  Id. at 974 (citing § 501.204(1), Fla. Stat. (1999)).  "Instead, the statute provides that the Florida courts must give 'due consideration and great weight' to Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C § 45(a)(1).  See § 501.204(2), Fla. Stat. (1999)."  Id. Federal decisions provide that "a deceptive practice is one that is 'likely to mislead' consumers."  Id. (citing In re Int'l Harvester Co., 104 F.T.C. 949 (1984); In re Cliffdale Assocs., Inc., 103 F.T.C. 110 (1984); Sw. Sunsites, Inc. v. FTC, 785 F.2d 1431 (9th Cir. 1986)).  According to Judge Padavano, however, "this standard does not require subjective evidence of reliance, as would be the case with a common law action for fraud."  Id.; see also State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc., 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); Latman v. Costa Cruise Lines, N.V., 758 So. 2d 699 (Fla. Dist. Ct. App. 2000)

23

("It is sufficient if a reasonable person would have relied on the representations."). Thus, in a FDUTPA action "the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." Id.; see also Fitzpatrick v. Gen. Mills, Inc., 635 F. 3d 1279 (11th Cir. 2011).

Defendants' Motion for Summary Judgment mentions FDUTPA once in the introduction, where Defendants merely describe the statute in a two-sentence paragraph, and once on the second to last page of the motion where Defendants argue that Plaintiff IIN lacks standing to assert a FDUTPA claim. See Motion for Summary Judgment at 6, 24. Defendants' Reply never mentions FDUTPA. See generally Reply. The Court therefore infers that Defendants have not moved for Summary Judgment against Georgian with respect to Count III. Regardless, the Court finds that the same evidence that defeats Defendant's Motion for Summary Judgment on Georgian's Lanham Act claim defeats their Motion for Summary Judgment on Georgian's FDUTPA claim. The Court will therefore deny Defendants' Motion for Summary Judgment insofar as it applies to Georgian on Count III.

## 5. Civil RICO 18 U.S.C. § 1962(c)

In Count IV, Georgian alleges a civil RICO violation. Section 1962(c) of RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c)). Therefore, "to state a RICO claim, a plaintiff must plead (1) that the defendant (2) through the commission of

24

two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." McCulloch v. PNC Bank, 298 F.3d 1217, 1225 (11th Cir. 2002).

Plaintiffs submit that "a rational jury could find sufficient evidence that each instance in which the Felgers engaged in the Unauthorized Listings scheme, the Website Scheme, the Fraudulent Promotional Scheme and the Fraudulent Phone Representation Scheme constituted a predicate act of Wire Fraud, in violation of 18 U.S.C. §1343." Opposition at 39. Plaintiffs further submit that Defendants' "unlawful use of Georgian's means of identification, i.e. her name and likeness, with the intent to commit, or to aid and abet, or in connection with, an unlawful activity that constitutes a violation of federal law, or that constitutes a felony under any applicable state or local law" constitutes a RICO violation. Id. Plaintiffs further submit that the unlawful violations are violations of the Lanham Act and Fla. Stat. 817.568. Id. Lastly, Plaintiffs contend that they have produced "sufficient evidence that the Felgers committed hundreds of predicate act[s] of wire fraud and identity fraud and that they directed and controlled the Zodiac Enterprise in such a manner as to constitute violations of RICO and RICO Conspiracy." Id.

Title 18 U.S.C. § 1961(1)(B) provides that any indictable acts under 18 U.S.C. § 1028 constitute "racketeering activity." Furthermore, 18 U.S.C. § 1028(a)(7) makes it an indictable offense to knowingly use a "means of identification of another person" without lawful authority and "in connection with, any unlawful activity that constitutes . . . a felony under any applicable State or local law." Under 18 U.S.C. § 1028(d)(7)(A), an

25

individual's name is a "means of identification."  Thus, when the Court reads these statutes in conjunction with one another, it becomes apparent that "racketeering activity" includes the use of another person's name without lawful authority in a way that affects interstate commerce and in connection with any unlawful activity that constitutes a felony under Florida state law.  See 18 U.S.C. § 1961(1)(B); 18 U.S.C. §§ 1028(a)(7), (d)(7).

Florida state law makes it a felony of the first degree to willfully and without authorization fraudulently use an individual's "personal identification information" without first obtaining the person's consent.  Fla. Stat. § 817.568(2)(c).  Section 817.568(1)(f), Florida Statutes establishes that a person's name constitutes "personal identification information."  Consequently, willful, unauthorized, fraudulent use of a person's name is a violation of section 817.568(2)(c), Florida Statutes and therefore constitutes a "predicate act" for RICO purposes provided the use affects interstate commerce.  See 18 U.S.C. § 1961(1)(B);18 U.S.C. §§ 1028(a)(7), (d)(7); Fla. Stat. § 817.568.[16]

Here, Plaintiffs have submitted evidence that Defendants violated Fla. Stat. § 817.568(2)(c), both by using Georgian's name and likeness on Zodiac's website and by representing to callers that Georgian was affiliated with Zodiac (and in some instances that Georgian was actually on the line).  Likewise, Plaintiffs produced evidence that Defendants used Georgian's name on Zodiac's website and in outbound

---

[16]     Likewise, each time someone placed an unauthorized listing on a third party website, that party arguably committed an act of wire fraud.  As set forth above, Plaintiffs have demonstrated a disputed issue of fact regarding the source of the listings.

automated messages.  Plaintiffs, therefore, have pointed to disputed issues of material fact regarding predicate acts.  However, to prove a RICO claim, Plaintiffs must do more.

To prove their RICO claim, Plaintiffs must also prove "a pattern of racketeering activity."  See Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1264 (11th Cir. 2004).  "To successfully allege a pattern of racketeering activity, plaintiffs must charge that (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature."  Id.  The Eleventh Circuit has held that it is "well established" that a plaintiff must prove something more than two isolated predicate acts to prove a "pattern of racketeering activity."  See id. at 1264-65.  "That something is the threat of continuing racketeering activity."  Id. at 1265.

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by providing a series of related predicates extending over a substantial period of time. . . .  Often a RICO action will be brought before continuity can be established in this way.  In such cases, liability depends on whether the threat of continuity is demonstrated.

Id. (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241-42 (1989)).

Where RICO allegations concern only a "single scheme with a discrete goal," courts have refused to find a closed-ended pattern of racketeering.  See id. at 1267 (citing cases).  Here, Plaintiffs have submitted evidence of a single scheme with a discrete goal: to use Georgian's name, image, likeness, and celebrity through various

27

means to generate revenues for the Defendants' own financial benefit.[17]  Because the evidence shows only a single scheme with a discrete goal, Georgian has failed to demonstrate a disputed issue of material fact regarding a closed-ended pattern of racketeering.  See id.

Because Georgian has failed to demonstrate a disputed issue of material fact regarding a closed-ended pattern of racketeering, she must demonstrate a disputed issue of fact regarding an open-ended pattern of racketeering.  See id.  To prove open-ended continuity, Georgian must prove facts that the Zodiac Defendants' acts "were part of the defendants' 'regular way of doing business,' or that the illegal acts threaten[] repetition in the future."  Id. (quoting H.J. Inc., 492 U.S. at 242-43).

Georgian has set forth disputed issues of fact that the Defendants' unauthorized use of Georgian's name was their "regular way of doing business."  Indeed, Plaintiffs' evidence of violations of Fla. Stat. § 817.568(2)(c) consists of (1) Georgian's name and likeness appearing on an interior web page of Zodiac's website that has since been removed; (2) at least one outbound automated phone call that one known person received that purportedly used Georgian's name; (3) incidents of Zodiac psychics representing to callers that they were Georgian or that Georgian was otherwise affiliated with Zodiac when she was not; and (4) unauthorized listings on third party websites, placed after the parties' agreement expired, that indicated Georgian was affiliated with Zodiac.  Taken together, a fact finder could determine that Zodiac's misuse of Georgian's name and likeness was their regular way of doing business.

---

[17]     Despite the assertion of the six separate schemes, all of the schemes involve the use of Georgian's name, likeness, etc.

28

Georgian, therefore, has demonstrated a disputed issue of material fact on her RICO claim and the Court will deny Defendants' Motion for Summary Judgment as it pertains to Georgian in Count IV.

### 6. RICO Conspiracy

In Count V, Georgian alleges that the Defendants conspired to violate RICO. Title 18 U.S.C. § 1962(d) makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c).  See 18 U.S.C. § 1962(d).

> A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts.  A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred from the conduct of the participants.

Rep. of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 950 (11th Cir. 1992) (citations omitted).

Here, Georgian has no direct evidence of an agreement amongst the Defendants to use Georgian's name without her authorization.  However, one could infer from the conduct of the parties (i.e., Defendants' offer to extend the endorsement contract, Georgian's rejection of Defendants' offer, and Defendants' continued use of Georgian's name without her authorization), that Defendants agreed to use Georgian's name without authorization.  Likewise, one could infer that Defendants agreed to use Georgian's name without her authorization on more than one occasion (e.g., the use on the website, the outbound automated phone message), which, as demonstrated above, constitutes a predicate act under a strict reading of the statutory framework.  Because Defendants failed to differentiate amongst themselves in their Motion for Summary

Judgment, and disputed issues of fact exist regarding Zodiac's commission of the

predicate acts, the Court assumes for purposes of the Motion that all Defendants share

in responsibility for Zodiac's actions (e.g., placing Georgian-related content on the web

site, authorizing outbound automated calls that use Georgian's name).  Georgian,

therefore, has demonstrated a disputed issue of material fact regarding her RICO

conspiracy claim.

7. Unjust Enrichment

Lastly, in Count VI, Georgian alleges a claim of unjust enrichment.  Defendants'

Motion for Summary Judgment mentions unjust enrichment in a single paragraph that

sets forth the following:

> PLAINTIFFS assert a claim of unjust enrichment for DEFENDANTS'
> allegedly knowing, intentional and willful use of LINDA GEORGIAN's
> name and its connection to the 1-800-310-5954 line with the full
> knowledge that they would reap the benefit of LINDA GEORGIAN's
> persona, celebrity and publicity in the form of fees from paying callers.
> However, in order to prove that they were unjustly enriched by the benefit,
> it must be shown that they either requested that LINDA GEORGIAN
> confer the benefit or that they knowingly and voluntarily accepted the
> benefit. Jackson-Jester v. Aziz, 48 So. 3d 88, 91 (Fla. 2d DCA 2010)
> (citing Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration,
> Inc., 412 So. 2d 883, 884 (Fla. 2d DCA 1982) ("Where unjust enrichment
> is asserted, a party is liable for services rendered only when he requests
> the other party to perform the services or knowingly and voluntarily
> accepts their benefits.").

Motion for Summary Judgment at 7.  Defendants' Motion for Summary Judgment,

therefore, merely sets forth a legal standard for an unjust enrichment claim.  See id.

Notably absent from Defendants' discussion of unjust enrichment is any argument that

Plaintiffs have no evidence that Defendants knowingly and voluntarily accepted the

benefit.[18]  Defendants have therefore failed to carry their burden to demonstrate that no issue of disputed facts exist for Plaintiffs' unjust enrichment claim.  The Court will therefore deny Defendants' Motion for Summary Judgment on Count VI.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 180] is **GRANTED IN PART AND DENIED IN PART** as follows:

1.    The Motion for Summary Judgment is **GRANTED** in its entirety as it pertains to Plaintiff Interactive Information Networks, LLC.

2.    The Motion for Summary Judgment is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 3rd day of August, 2011.

JAMES I. COHN
United States District Judge

---

[18]    Plaintiffs, in their Opposition, assert in footnote 1 that "[t]he Motion is actuality [sic] is a partial motion for summary judgment as it does not address Plaintiffs' unjust enrichment claim."  Opposition at 1, n. 1.  Defendants' Reply does not contend otherwise.  Likewise, Defendants' Reply never mentions unjust enrichment.